**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LOLITA NEWELL and RICHARD SCALES, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  22-cv-5349 |
| v. | ) ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, RONALD WATTS, BRIAN BOLTON, DARRYL EDWARDS, ROBERT GONZALEZ, ALVIN JONES, FRANKIE LANE, KALLATT MOHAMMED, CALVIN RIDGELL, JOHN RODRIGUEZ, GEROME SUMMERS JR., and KENNETH YOUNG JR., | ) ) ) ) ) ) ) | Magistrate Judge Sheila M. Finnegan<br><br>(This case is part of *In re: Watts Coordinated Pretrial Proceedings*, Master Docket Case No. 19 C 1717) |
| Defendants. | ) ) ) | |

**CITY OF CHICAGO'S ANSWER TO PLAINTIFFS' COMPLAINT, AFFIRMATIVE DEFENSES, AND JURY DEMAND**

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Burns Noland LLP, for its answer to Plaintiffs' Complaint, states:

1.      This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

**ANSWER**:    The City admits plaintiffs' complaint asserts claims pursuant to federal statutes and Illinois law that seek to invoke the jurisdiction of this Court. The City denies liability to plaintiffs for any and all claims asserted in the complaint.

**I.      Parties**

2.      Plaintiff Lolita Newell is a resident of Florida.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.

3.      Plaintiff Richard Scales is a resident of the Northern District of Illinois.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

4. Defendant City of Chicago is an Illinois municipal corporation.

**ANSWER**: The City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois.

5. Defendants Ronald Watts, Brian Bolton, Darryl Edwards, Robert Gonzalez, Alvin Jones, Frankie Lane, Kallatt Mohammed, Calvin Ridgell, John Rodriguez, Gerome Summers Jr., and Kenneth Young Jr., (the "individual officer defendants") were at all relevant times acting under color of their offices as Chicago police officers. Plaintiffs sue the individual officer defendants in their individual capacities only.

**ANSWER**: Paragraph 5 asserts legal conclusions to which no response is required. To the extent a response to those allegations is deemed necessary, the City denies the commission of the criminal acts as alleged against certain individual defendants in the complaint would be within the scope of a police officer's employment or under color of law. In further response, the City admits Defendants Ronald Watts, Brian Bolton, Darryl Edwards, Robert Gonzalez, Alvin Jones, Frankie Lane, Kallatt Mohammed, Calvin Ridgell, John Rodriguez, Gerome Summers, and Kenneth Young (collectively, the "Defendant Officers") were police officers employed by the Chicago Police Department ("CPD") at certain times alleged in the complaint. The City denies the Defendant Officers were employed by CPD or acted as CPD employees during "all relevant times" contemplated in the complaint. The City admits the complaint purports to sue the Defendant Officers in their individual capacities. The City denies any remaining allegations in paragraph 5 inconsistent with the foregoing.

## II. Overview

6. Plaintiffs Newell and Scales are two of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

2

**ANSWER**: The City admits Defendant Watts is a convicted felon who formerly held the rank of sergeant in the CPD. The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the vague and undefined phrase "Watts and his tactical team," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6.

7. As of the date of filing, more than 150 individuals who were framed by the Watts Gang have had their convictions vacated by the Circuit Court of Cook County.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City is without knowledge or information sufficient to form a belief as to the truth of the vague and argumentative allegations that remain in paragraph 7.

8. Many victims of the Watts Gang are currently prosecuting federal lawsuits. Pursuant to an order of the Court's Executive Committee dated July 12, 2018, these cases have been coordinated for pretrial proceedings under the caption, *In Re: Watts Coordinated Pretrial Proceedings*, 19-cv-01717.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City admits the existence of *In re: Watts Coordinated Pretrial Proceedings*, Master Docket Case No. 19 C 1717, which includes a number of federal lawsuits against Defendant Watts and others that have been coordinated for pretrial proceedings by the Executive Committee of the United Stated District Court, Northern District of Illinois. The City denies liability to the plaintiffs in the federal lawsuits that are part of the coordinated proceedings.

9.      The Executive Committee's Order states that additional cases, such as this one, filed with similar claims and the same defendants shall be part of these coordinated pretrial proceedings.

**ANSWER**:    The City admits the existence of the Executive Committee Order creating *In re: Watts Coordinated Pretrial Proceedings*, Master Docket Case No. 19 C 1717, and that this lawsuit is part of those coordinated proceedings. The City denies the remaining allegations contained in paragraph 9 that are inconsistent with the foregoing.

10.      The Watts Gang of officers engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang of officers," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations are intended to refer to the Defendant Officers, the City admits Defendants Watts and Mohammed were arrested and charged with theft of government funds, and that they both pleaded guilty to those charges. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10.

11.      High ranking officials within the Chicago Police Department were aware of the Watts Gang's criminal enterprise but failed to take any action to stop it.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the "high ranking officials" to whom plaintiffs are referring, or those individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating those terms. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City admits that CPD received information alleging Defendants Watts and Mohammed were engaging in criminal misconduct against drug dealers at the Ida B. Wells housing complex, and that CPD's Internal Affairs

4

Department ("IAD") participated with federal authorities in a federally-led investigation of those allegations. The City denies the remaining allegations in paragraph 11.

12. The Chicago Police Department's official policies and customs of failing to discipline, supervise, and control its officers, as well as its "code of silence," were a proximate cause of the Watts Gang's criminal enterprise.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City denies the "official policies and customs" alleged in this paragraph and further denies that policies or customs of the CPD were a proximate cause of Defendant Watts' criminal activities.

13. Watts Gang officers arrested plaintiffs without probable cause, fabricated evidence, and framed them for drug offenses.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. Based on police department reports, the City admits plaintiffs were arrested on June 28, 2004 and charged with drug offenses. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 13.

14. Based on the powerful evidence that has become known about the Watts Gang's nearly decade-long criminal enterprise, the Circuit Court of Cook County vacated the convictions of plaintiffs and granted each of them a certificate of innocence.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that

term. The City admits on information and belief the Circuit Court of Cook County vacated plaintiffs' convictions. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

15.     Plaintiffs bring this lawsuit to secure a remedy for illegal incarceration, illegal restraints on liberty, and other injuries, all of which were caused by: the Watts Gang officers, the failure of high-ranking officials within the Chicago Police Department to stop the Watts Gang, the code of silence within the Chicago Police Department, and the Chicago Police Department's defective discipline policy.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City admits plaintiffs' complaint seeks damages, but it denies liability to plaintiffs for any of the claims and/or damages asserted therein. The City denies the remaining allegations contained in paragraph 15.

### III.     False Arrest and Illegal Prosecution of Plaintiff[1]

16.     On June 28, 2004, plaintiffs were arrested by the individual officer defendants at the Ida B. Wells Homes in Chicago.

**ANSWER**:     The City admits police department reports reflect that on June 28, 2004, plaintiffs were arrested by certain Defendant Officers while on the grounds of the Ida B. Wells Homes in Chicago. The City denies any remaining allegations contained in paragraph 16 inconsistent with the foregoing.

17.     At the time the officers arrested plaintiff Newell:

    a.  None of the individual officer defendants had a warrant authorizing the arrest of plaintiff Newell;

---

[1] Although they do not conform with pleading rules, to the extent that titles used throughout the complaint require an answer, the City denies all wrongful conduct alleged against it in these titles.

    b. None of the individual officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff Newell;

    c. None of the individual officer defendants had observed plaintiff Newell commit any offense; and

    d. None of the individual officer defendants had received information from any source that plaintiff Newell had committed an offense.

**ANSWER**: Based on police department reports, the City admits the allegations in paragraph 17(a) and denies the allegations in paragraphs 17(c) and 17(d). The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17(b).

18. At the time the officers arrested plaintiff Scales:

    a. None of the individual officer defendants had a warrant authorizing the arrest of plaintiff Scales;

    b. None of the individual officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff Scales;

    c. None of the individual officer defendants had observed plaintiff Scales commit any offense; and

    d. None of the individual officer defendants had received information from any source that plaintiff Scales had committed an offense.

**ANSWER**: Based on police department reports, the City admits the allegations in paragraph 18(a) and denies the allegations in paragraphs 18(c) and 18(d). The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18(b).

19. After arresting plaintiffs, the individual officer defendants conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrests, to cover-up their wrongdoing, and to cause plaintiffs to be wrongfully detained and prosecuted.

**ANSWER**: The City is without knowledge or information of the alleged misconduct involving plaintiffs as asserted in the complaint against the Defendant Officers. Based on police

7

department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 19.

20. The false story fabricated by the individual officer defendants included their concocted claim that they observed drug transactions involving plaintiff Scales and two other men and that they saw plaintiff Scales hand a bag of drugs to plaintiff Newell.

**ANSWER**: The City is without knowledge or information of the alleged misconduct involving plaintiffs as asserted in the complaint against the Defendant Officers. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 20.

21. The acts of the individual officer defendants in furtherance of their scheme to frame plaintiffs include the following:

a. One or more of the individual officer defendants prepared police reports containing the false story, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiffs' rights;

b. One or more of the individual officer defendants attested to the false story through the official police reports, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiffs' rights;

c. Defendant Watts formally approved one or more of the official police reports, knowing that the story set out therein was false; and

d. One or more of the individual officer defendants communicated the false story to prosecutors, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiffs' rights.

**ANSWER**: The City is without knowledge or information of the alleged misconduct involving plaintiffs as asserted in the complaint against the Defendant Officers. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 21.

22. The individual officer defendants committed the above-described wrongful acts knowing that the acts would cause plaintiffs to be held in custody and falsely prosecuted for offenses that had never occurred.

8

**ANSWER**: The City is without knowledge or information of the alleged misconduct involving plaintiffs as asserted in the complaint against the Defendant Officers. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 22.

23. Plaintiff Newell was charged (under the name Lolita Sparks) with a drug offense because of the wrongful acts of the individual officer defendants.

**ANSWER**: Based on police department reports, the City admits plaintiff Newell was charged with a drug offense. The City is without knowledge or information of the alleged misconduct involving plaintiff Newell as asserted in the complaint against the Defendant Officers. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 23.

24. Plaintiff Scales was charged (under the name Kenneth Jones) with a drug offense because of the wrongful acts of the individual officer defendants.

**ANSWER**: Based on police department reports, the City admits plaintiff Scales was charged with a drug offense. The City is without knowledge or information of the alleged misconduct involving plaintiff Scales as asserted in the complaint against the Defendant Officers. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 24.

25. Plaintiff Newell sought to prove her innocence at trial, but she was found guilty of the false charge on December 14, 2004, and received a sentence of 2 years in the Illinois Department of Corrections.

**ANSWER**: The City admits on information and belief plaintiff Newell was convicted of a drug crime in Case No. 04 CR 18282. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the criminal charge was "false." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

26. Plaintiff Newell was deprived of liberty because of the above-described wrongful acts of the individual officer defendants.

**ANSWER**: The City is without knowledge or information of the alleged misconduct involving plaintiffs as asserted in the complaint against the Defendant Officers. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 26.

27. Plaintiff Scales sought to prove his innocence at trial, but he was found guilty on December 14, 2004, and received a sentence of 3 years in the Illinois Department of Corrections.

**ANSWER**: The City admits on information and belief plaintiff Scales was convicted of a drug crime in Case No. 04 CR 18282. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the criminal charge was "false." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

28. Plaintiff Scales was deprived of liberty because of the above-described wrongful acts of the individual officer defendants.

**ANSWER**: The City is without knowledge or information of the alleged misconduct involving plaintiffs as asserted in the complaint against the Defendant Officers. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the remaining allegations contained in paragraph 28.

## IV. Plaintiff's Exoneration

29. Plaintiffs challenged their above-described wrongful convictions after learning that federal prosecutors and lawyers for other wrongfully convicted individuals had discovered the Watts Gang's criminal enterprise.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that

term. The City is without knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 29 concerning plaintiffs' reasons for challenging their convictions.

The City denies any remaining allegations contained in this paragraph.

30. On April 22, 2022, the Circuit Court of Cook County vacated plaintiff Newell's conviction and granted the State's request to *nolle prosequi* the case.

**ANSWER**: Based on court documents pertaining to Case No. 04 CR 18282-04, the City

admits the allegations contained in paragraph 30.

31. On June 7, 2002, the Circuit Court of Cook County granted plaintiff Newell a certificate of innocence.

**ANSWER**: The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in this paragraph.

32. On April 22, 2022, the Circuit Court of Cook County vacated plaintiff Scales's conviction and granted the State's request to *nolle prosequi* the case.

**ANSWER**: Based on court documents pertaining to Case No. 04 CR 18282-03, the City

admits the allegations contained in paragraph 32.

33. On June 7, 2002, the Circuit Court of Cook County granted plaintiff Scales a certificate of innocence.

**ANSWER**: The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in this paragraph.

**V.     Plaintiff's Arrest and Prosecution Were Part of a Long-Running Pattern Known to High-Ranking Officials Within the Chicago Police Department**

34. Before the Watts Gang engineered plaintiffs' above-described wrongful arrests, detentions, and prosecutions, the Chicago Police Department had received many civilian complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

**ANSWER**: To the extent this paragraph refers to or relies on allegations made in the

preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The

11

City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiffs allege to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City admits that CPD received information in 2004 alleging Defendant Watts was engaging in criminal misconduct against drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a joint federally-led investigation of those allegations. The City further admits Defendant Mohammed was subsequently included as a target of the investigation. The City is without knowledge or information of the alleged misconduct involving plaintiffs as asserted in the complaint against the Defendant Officers. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the allegation that plaintiffs' arrests, detentions, and prosecutions were "wrongful." The City denies any remaining allegations in paragraph 34 inconsistent with the foregoing.

35. Criminal investigators corroborated these civilian complaints with information they obtained from multiple cooperating witnesses.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the "criminal investigators" to whom plaintiffs are referring. To the extent the allegations of this paragraph are intended to refer to investigators involved in the federally-led investigation in which CPD's IAD participated, the City admits on information and belief certain individuals made allegations to those investigators claiming that Defendant Watts was engaging in criminal misconduct at the Ida B. Wells housing complex. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35.

36. High-ranking officials within the Chicago Police Department learned about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang, but they deliberately chose to turn a blind eye to the wrongdoing by Watts and his gang.

12

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the "high ranking officials" to whom plaintiffs are referring, or those individuals alleged to be part of the argumentative, vague, and undefined terms "Watts Gang" and "Watts and his Gang," and it therefore makes no further response to the allegations in this paragraph incorporating those terms. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City admits that CPD received information in 2004 alleging Defendant Watts was engaging in criminal misconduct against drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a joint federally-led investigation of those allegations. The City further admits Defendant Mohammed was subsequently included as a target of the investigation. The City denies the CPD "deliberately chose to turn a blind eye" to the allegations concerning Watts. To the extent the allegations in this paragraph suggest or infer the City was obligated to take actions that would have interfered with, obstructed, and/or exposed a pending confidential criminal investigation, those allegations are denied. The City denies any remaining allegations contained in paragraph 36.

37. As a direct and proximate result of the deliberate indifference of these high-ranking officials, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiffs, as described above.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the "high ranking officials" to whom plaintiffs are referring, or those individuals alleged to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no further response to the allegations in this paragraph incorporating those terms. Based on police department reports and D'Andra Woods' sworn testimony in Case No. 04 CR 18282, the City denies the allegation that plaintiffs' arrests, detentions, and prosecutions were "wrongful." To the extent this paragraph suggests or infers the City was obligated to take actions that would have

13

interfered with, obstructed, and/or exposed a pending federal confidential investigation, those allegations are denied. The City denies the remaining allegations contained in paragraph 37.

## VI. Official Policies and Customs of the Chicago Police Department Were the Moving Force Behind the Defendants' Misconduct

38.     At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated, encouraged, and condoned the Defendants' misconduct.

**ANSWER**:     The City denies the allegations contained in paragraph 38.

### A. Failure to Discipline

39.     At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

**ANSWER**:     The City denies the allegations contained in paragraph 39.

40.     Before plaintiffs' arrests, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

**ANSWER**:     The City denies the allegations contained in paragraph 40.

41.     Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

**ANSWER**:     The City denies the allegations contained in paragraph 41.

42.     Before the Watts Gang engineered plaintiffs' above-described wrongful arrests, detentions, and prosecutions, the individual officer defendants had been the subject of numerous formal complaints of official misconduct.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations are intended to refer to the Defendant Officers, the City admits on information and belief each of the individual Defendant Officers was the subject of complaints

14

alleging misconduct against him or her as a police officer. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. The City denies any remaining allegations or inferences in paragraph 42 inconsistent with the foregoing.

43.     As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiffs, as described above.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City denies the remaining allegations contained in paragraph 43.

**B.  Code of Silence**

44.     At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

**ANSWER**:     The City denies the allegations as phrased in paragraph 44, and it further states that a "code of silence" as described is directly contrary to the rules, policies, and training of the CPD.

45.     At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER**:     The City denies the allegations as phrased in paragraph 45, and it further states that a "code of silence" as described in this paragraph is directly contrary to the rules, policies, and training of the CPD.

15

46. This "code of silence" facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

**ANSWER**: The City denies the allegations contained in paragraph 46.

47. Consistent with this "code of silence," the few people within the Chicago Police Department who stood up to Watts and his gang or who attempted to report their misconduct were either ignored or punished, and the Watts Gang was thereby able to engage in misconduct with impunity.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined terms "Watts Gang" or "Watts and his gang," and it therefore makes no further response to the allegations in this paragraph incorporating either term. The City denies the remaining allegations as phrased in paragraph 47.

48. Watts and his gang are not the first Chicago police officers whom the City of Chicago allowed to abuse citizens with impunity while the City turned a blind eye.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals alleged to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City denies the remaining allegations as phrased in paragraph 48.

49. One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

**ANSWER**: The City admits former police officer Jerome Finnigan was convicted and sentenced on criminal charges in 2011, and it admits on information and belief one of the charges against Finnigan was based on his alleged attempt to hire someone to kill a police officer whom Finnigan understood might be a potential witness against him in criminal proceedings. The City denies the allegations pertaining to Finnigan are evidence of an alleged widespread practice, and

16

it denies the relevance of those allegations to the claims in plaintiffs' complaint. The City further denies it "turned a blind eye" to Finnigan's misconduct or had a "widespread practice" of turning a blind eye to police officer misconduct. The City denies any remaining allegations contained in paragraph 49.

50. Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER**: The City admits Finnigan and other members of the CPD's Special Operations Section were convicted of various criminal charges. The City denies any remaining allegations in paragraph 50 inconsistent with the foregoing.

51. Finnigan and his crew engaged in their misconduct at around the same time that plaintiffs were subjected to the abuses described above.

**ANSWER**: To the extent this paragraph refers to or relies on allegations "described above" in preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City lacks knowledge or information sufficient to form a belief as to identities of the individuals alleged to be part of Finnigan's "crew." The City is without knowledge or information of the alleged misconduct involving plaintiffs as asserted in the complaint against the individual defendants, and it is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 51.

52. Finnigan, like the defendants in this case, had been the subject of many formal complaints of misconduct.

**ANSWER**: The City is without knowledge or information sufficient to form a belief as to the meaning of the vague and argumentative term "many." The City admits Finnegan and the Defendant Officers had been the subjects of complaints of alleged misconduct over the course of their careers. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged

misconduct occurred. The City denies any remaining allegations in paragraph 52 inconsistent with the foregoing.

53. Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER**: The City admits Finnigan made a statement at his criminal sentencing hearing and refers to the transcript of that statement for its content. The City is without knowledge or information sufficient to form a belief as to the truthfulness of Finnigan's statement or the truthfulness, credibility, or motives of Finnigan in making the statement.

54. Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

**ANSWER**: The City admits on information and belief that on November 21, 2011, Defendants Watts and Mohammed were caught in an undercover sting operation stealing government funds they believed to be drug proceeds from a cooperating witness working with the FBI, and that Watts and Mohammed subsequently were charged with federal crimes.

55. Defendant Mohammed pleaded guilty in 2012.

**ANSWER**: The City admits on information and belief the allegations contained in paragraph 55.

56. Defendant Watts pleaded guilty in 2013.

**ANSWER**: The City admits on information and belief the allegations contained in paragraph 56.

57. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that, as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER**: The City admits the jury entered a verdict against it in *Obrycka v. City of Chicago, et al.*, Case No. 07 C 2372, but states that the District Court in *Obrycka* subsequently

18

noted the basis for the jury's verdict was "unclear" and was "based on the unique facts of [that] case." *Id.*, Mem. Op. & Order, Dkt. #712, at 10. Further answering, the City denies the *Obrycka* case is applicable to the facts and circumstances alleged in the complaint.

58.     In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

**ANSWER**:     The City admits that on December 9, 2015, Mayor Rahm Emanuel stated, in part, the following: "This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny, or in some cases cover-up the bad actions of a colleague or colleagues." The City denies that any code of silence within the CPD is pervasive, widespread, or a well-settled custom or practice to which the City's final policymakers have been deliberately indifferent. Further responding, the City states that a "code of silence" as described in the complaint is directly contrary to the rules, policies, and training of the CPD.

59.     In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**ANSWER**:     The City admits the existence of the April 2016 Report issued by the Police Accountability Task Force ("PATF Report"), and that the language quoted in this paragraph is contained within that Report. The City states that paraphrasing snippets of text taken from the PATF Report is an oversimplification and imprecise representation of that report. The City further states that a "code of silence" as described in the complaint is directly contrary to the rules, policies, and training of the CPD. In further responding, the City denies it has been deliberately indifferent to the type of misconduct alleged in the complaint and denies the PATF Report is applicable to plaintiffs' allegations.

60.    In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

**ANSWER**:    The City admits the existence of the January 2017 Department of Justice report entitled "Investigation of the Chicago Police Department" (the "DOJ Report"). The City admits the DOJ Report states, in part, "current officers and former high-level CPD officials interviewed during our investigation" shared the opinion that a "code of silence" existed within CPD. The City denies that any "code of silence" within the CPD is pervasive, widespread, or a well-settled custom or practice to which the City's final policy makers have been deliberately indifferent. The City further states that a "code of silence" as described in the complaint is directly contrary to the rules, policies, and training of the CPD.

61.    On March 29, 2019, then-Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

**ANSWER**:    The City admits on information and belief that former Chicago Police Superintendent Eddie Johnson was interviewed for a newspaper article in March 2019, and in response to a question, was quoted as stating, "Do I think there might be officers that look the other way? Yeah, I do." The City states that Mr. Johnson was further quoted as stating he was "not going to indict the entire department for the acts of certain individuals." The City denies that any "code of silence" within the CPD is pervasive, widespread, or a well-settled custom or practice to which the City's final policymakers have been deliberately indifferent. Further responding, the City states that a "code of silence" as described in the complaint is directly contrary to the rules, policies, and training of the CPD. The City denies any remaining allegations contained in paragraph 61.

62.    In October 2020, Chicago Police Superintendent David Brown acknowledged in public comments that the "code of silence" continues to exist.

20

**ANSWER**: The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62. Further responding, the City states that a "code of silence" as described in this complaint is directly contrary to the rules, policies, and training of the CPD.

63. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, Superintendent Johnson, Superintendent Brown, the Task Force, and the Department of Justice was also in place when plaintiffs suffered the wrongful arrests, detentions, and prosecutions described above.

**ANSWER**: The City denies the allegations as phrased in paragraph 63.

64. As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiffs, as described above.

**ANSWER**: The City denies the allegations as phrased in paragraph 64.

## VII.  Claims

65. As a result of the foregoing, all of the defendants caused plaintiffs to be deprived of rights secured by the Fourth and Fourteenth Amendments.

**ANSWER**: The City makes no answer or response to the allegations of paragraph 65 to the extent directed against other defendants. As directed against it, the City denies the allegations contained in paragraph 65.

66. As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiffs were subjected to malicious prosecution under Illinois law.

**ANSWER**: The City denies the allegations contained in paragraph 66.

67. Plaintiff hereby demands trial by jury.

**ANSWER**: The City admits plaintiffs' complaint includes a jury demand.

WHEREFORE, Defendant, City of Chicago, denies that plaintiffs are entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and

21

against plaintiffs on all claims in plaintiffs' complaint, and for its costs and such further relief as this Court deems just.

**AFFIRMATIVE DEFENSES**

Defendant, City of Chicago, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to plaintiffs' complaint, states:

1.      To the extent individual employees of the City or its police department are not liable as alleged in the complaint, the City would not be liable. 745 ILCS 10/2-109.

2.      The City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

3.      Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

4.      Plaintiffs' claims are barred by the applicable statutes of limitations.

5.      Plaintiffs' claims are barred by the doctrines of *res judicata*, judicial estoppel, and collateral estoppel.

6.      The City of Chicago is immune from the imposition of punitive damages under both state and federal law. Punitive damages cannot be imposed against a municipality in a §1983 action. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee. 745 ILCS 10/2-102.

7.      As to plaintiffs' state law claim, the City is not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

22

8.  To the extent any injuries or damages claimed by either plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of that plaintiff as reflected in the public record, including but not limited to police reports and court records, any verdict or judgment obtained by that plaintiff must be reduced by an amount commensurate with the degree of fault attributed to that plaintiff by the jury in this case.

9.  To the extent either plaintiff failed to mitigate any of his or her claimed injuries or damages, including by his or her criminal misconduct, any verdict or judgment obtained by that plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

10. Any recovery of damages by either plaintiff against the City is barred by the doctrine of *in pari delicto*.

11. The City would be entitled to a set-off for any and all amounts either plaintiff recovered for the same injuries and damages being claimed in this lawsuit, including but not limited to amounts received from the Illinois Court of Claims.

12. Plaintiffs' complaint fails to state cognizable claims for relief against the City:

    a.  Any fabrication of evidence claim is not actionable as a due process claim because the evidence allegedly fabricated did not cause their convictions;

    b.  Plaintiffs have not alleged a viable *Brady* claim;

    c.  To the extent plaintiffs assert a Fourteenth Amendment federal malicious prosecution claim or due process claim based on pre-trial deprivation of liberty, those claims are not actionable as a matter of law;

    d.  Any failure to intervene claim has no basis in the Constitution, and the "Supreme Court has held many times that §1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen*, 48 F.4th 816, 834-35 (7th Cir. 2022) (Easterbrook, J., concurring);

    e.  Any Fourth Amendment claim for detention without probable cause is time-barred; and

23

      f.      Plaintiffs' state law malicious prosecution claim is time-barred.

To the extent the constitutional claims in the complaint fail to state actionable claims, the *Monell* claim against the City likewise fails to state an actionable claim. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (Where a plaintiff cannot establish a constitutional violation, he has no claim against the municipality).

13.      To the extent plaintiffs prove the allegations that assert criminal conduct against the individual Defendant Officers, such acts would be outside the scope of employment of a police officer and the City would not be liable for those acts as a matter of law.

### JURY DEMAND

Defendant City of Chicago respectfully requests a trial by jury.

Dated: September 19, 2024

            Respectfully submitted,

            MARY B. RICHARDSON-LOWRY

            Corporation Counsel of the City of Chicago

            By: *s/ Paul A. Michalik*
               Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 South Wacker Dr., Suite 5200
Chicago, IL 60606
(312) 982-0090 (telephone)
(312) 429-0644 (facsimile)

*Attorneys for Defendant City of Chicago*

24

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on **September 19, 2024**, I electronically filed the foregoing **Defendant City of Chicago's Answer to Plaintiffs' Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record via the Court's CM/ECF system.

*s/ Paul A. Michalik*